**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

SHARON KING and

PAUL SPOTTS, on behalf of themselves and all others similarly situated,

     Plaintiffs,

v.

CITY OF COLORADO SPRINGS,

     Defendant.

---

**COMPLAINT**

---

     Plaintiffs, Sharon King and Paul Spotts ("Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and all others similarly situated, file this Complaint against Defendant, City of Colorado Springs ("City"), and allege as follows:

## <u>INTRODUCTION</u>

     1.    Plaintiffs bring this lawsuit against the City to redress its failure to provide full and equal access to its pedestrian right-of-way to Plaintiffs and similarly situated individuals with mobility disabilities. As alleged further below, the City has failed to

install and maintain curb ramps that are necessary to make its pedestrian right-of-way readily accessible to people with mobility disabilities and to comply with its obligation to install and/or remediate curb ramps when it engages in alterations or new construction of streets, roadways, sidewalks, and other pedestrian walkways. A substantial number of the street crossings within the City's pedestrian right-of-way do not comply with applicable federal regulations addressing accessibility for people with mobility disabilities because, for example, they lack curb ramps entirely, have curb ramps on only one side of a corner, or have curb ramps that are too narrow, steep, cracked, broken, or uplifted to be used by people with mobility disabilities.

2. The City's pedestrian right-of-way is a fundamental public program, service, and/or activity that the City provides for the benefit of its residents and visitors. Accessible curb ramps are necessary to permit people with mobility disabilities to access the City's pedestrian right-of-way. Because the City's pedestrian right-of-way constitutes a core mode of transportation, the absence of accessible curb ramps prevents people with mobility disabilities from independently, fully, and meaningfully participating in all aspects of society, including employment, housing, education, transportation, public accommodations, and recreation, among others. Accordingly, an accessible pedestrian right-of-way is essential to realizing the integration mandate of disability non-discrimination laws, including the Americans with Disabilities Act, the Rehabilitation Act, and the Colorado Anti-Discrimination Act.

3. Named Plaintiffs are individuals with mobility disabilities who bring this action on behalf of themselves and all persons with mobility disabilities who, like Named

Plaintiffs, live in, work in, or visit Colorado Springs and are being denied full and equal access to the City's pedestrian right-of-way and subjected to unlawful or hazardous conditions due to the absence of accessible curb ramps within the City's pedestrian right-of-way.

4.      Federal disability access laws were enacted to provide persons with disabilities an equal opportunity to participate fully in civic life. *See* 42 U.S.C. § 12101(a)(7) (Americans with Disabilities Act ("ADA")); 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973 ("Section 504")). Under the ADA and Section 504, a public entity's sidewalks, crosswalks, and paved paths—collectively referred to as a public entity's "pedestrian right-of-way"—are a "program," "service," or "activity" that must be readily accessible to persons with mobility disabilities. *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002). As detailed further below, the City has excluded Plaintiffs and all other similarly situated individuals with mobility disabilities from participation in or denied them the benefits of the City's pedestrian right-of-way program, service, or activity, or subjected them to discrimination by: a) failing to install and remediate curb ramps (i) in newly-constructed or altered portions of the City's pedestrian right-of-way and (ii) at crossings adjacent to newly constructed or altered roadways; and b) failing to install, remediate and maintain curb ramps where necessary to provide people with mobility disabilities meaningful access to (i) the City's pedestrian right-of-way, when viewed in its entirety, and (ii) facilities in which City programs, services, and activities are made available to the public.

5.      Both the ADA (since January 27, 1992) and Section 504 (since June 3,

1977) have mandated that whenever a government entity newly constructs or alters streets, roads, or highways, it must install curb ramps at any intersection having curbs or other barriers to entry from a street level pedestrian walkway, to ensure that newly constructed or altered pedestrian right-of-way programs and facilities are readily accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.151(a)(1), (b)(1), (b)(4)(i)(1), (b)(4)(i)(2); 28 C.F.R. pt. 36, app. D § 10.2.1; 45 C.F.R. § 84.23(b); 36 C.F.R. pt. 1191, app. D § 810.2.3. The ADA and Section 504 also mandate that a public entity operate each program, service, or activity so that the program, service, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.150(a), (b)(1); 45 C.F.R. § 84.22(a), (b). To the extent that structural changes to facilities existing as of the effective date of the ADA or Section 504 are necessary to achieve this "program access" mandate, such changes were to have been made by no later than January 26, 1995 under the ADA, and by no later than June 3, 1980 under Section 504. 28 C.F.R. § 35.150(c); 45 C.F.R. § 84.22(d).

6.      In addition, the Colorado Anti-Discrimination Act ("CADA") prohibits disability discrimination by places of public accommodation, defined to include "public facilit[ies] of any kind whether indoor or outdoor." C.R.S. § 24-34-601. By regulation, this is to be interpreted in harmony with the federal ADA. 3 CCR 708-1, Rule 60.1.

7.      The City's pedestrian right-of-way, when viewed in its entirety, is not readily accessible to and usable by persons with mobility disabilities due to the City's failure to install and maintain accessible curb ramps. The City has also failed to install and maintain accessible curb ramps necessary to allow persons with mobility disabilities

to access facilities where City programs, services, and activities are provided to the public. In addition, the City has failed to install accessible curb ramps or remediate existing curb ramps as part of new construction or alterations of its pedestrian walkways, streets, roadways, and highways. As a result, Plaintiffs and other persons with mobility disabilities must forgo participation in daily activities in the City — including visiting public facilities, places of public accommodation, or friends — or risk injury to themselves and/or damage to their mobility devices by traveling on or around inaccessible portions of the pedestrian right-of-way. At times, Plaintiffs are able to use the pedestrian right-of-way, but only by taking circuitous routes to avoid barriers to accessibility, which wastes their time and energy. As a result of the many missing and noncompliant curb ramps in the City, people with mobility disabilities do not have full and equal access to the pedestrian right-of-way.

8.     The denial of meaningful, equal, and safe access to the City's pedestrian right-of-way for persons with mobility disabilities complained of herein is the direct result of the City's policies, procedures, and practices with regard to pedestrian walkways and disability access, including, but not limited to the following:

a.     The failure to install accessible curb ramps at locations where no curb ramps exist, or where inaccessible curb ramps exist, within the time required by applicable federal disability access laws or on any other reasonable schedule;

b.     The failure to install accessible curb ramps, or remediate existing noncompliant curb ramps, at street corners or sidewalks that are newly constructed, resurfaced or otherwise altered;

c.     The failure to install curb ramps at intersections in the City that are necessary to provide meaningful, equal, and safe access to the pedestrian right-of-way;

d.     The failure to timely develop and implement a process for identifying intersections and corners throughout the City at which curb ramps are necessary to provide meaningful, equal, and safe access to the pedestrian right-of-way;

e.     The failure to adopt and utilize or require and enforce the utilization of a curb ramp design that complies with applicable federal and state design standards or guidelines;

f.     The failure to install accessible curb ramps within a reasonable time frame after receiving a request to do so or otherwise being notified of the need for an accessible curb ramp at a particular location;

g.     The failure to adopt or implement reasonable administrative methods, policies, and procedures for inspecting, repairing, and maintaining the pedestrian right-of-way, including curb ramps, as required by Title II of the ADA and its implementing regulations including 28 C.F.R. § 35.133 (maintenance of accessible features);

h.     The failure to remediate corners with no curb ramps or with curb ramps that are not properly positioned such that they require pedestrians with mobility disabilities to travel around the corner in the street alongside vehicular traffic in order to access a crossing or cause pedestrians with mobility disabilities to roll or fall into the roadway;

i.     The failure to remediate curb ramps that are designed and/or

constructed in a noncompliant manner such that people with mobility disabilities are denied meaningful access to the pedestrian right-of-way as a whole. These deficiencies often include one or more of the following:

        (1)     Running, cross, and side slopes of curb ramps that are excessively steep;

        (2)     Ramps that are too narrow to accommodate wheelchairs or scooters;

        (3)     Landings at the top of curb ramps that do not provide enough space for a wheelchair to maneuver onto or off the ramp, forcing persons with mobility disabilities to use the much steeper side flares or roll off the sidewalk entirely;

        (4)     Excessive counter slopes at the bottoms of curb ramps. The combination of excessive curb ramp slopes and/or gutter pan counter slopes often forces wheelchair users to scrape the paving with their foot rests and can even bring a wheelchair or scooter to a full stop, creating risks of falling and injury; and

        (5)     Lips at the bottom of curb ramps where the ramp meets the gutter. Such non-flush transitions create additional risks of scraping the pavement and/or sudden stops and possible falls and injury. Federal access codes have required smooth transitions at the base of curb ramps for several decades.

9.     These administrative methods, policies, and practices, or lack thereof, discriminate against persons with disabilities by denying them access to the City's pedestrian right-of-way, when viewed in its entirety, as well as to facilities in which City programs, services, and activities are made available to the public.

10.     For decades, the City has failed to meet ADA and Section 504 accessibility requirements and to adopt and implement systematic efforts to ensure that the City's pedestrian right-of-way is readily accessible to and useable by persons with mobility disabilities. Furthermore, the City has for decades made compliance with the ADA and Section 504 a lower priority than other activities and projects, including discretionary activities and projects not mandated by law. Prioritizing compliance with the ADA and Section 504 in this manner also constitutes a policy or practice that denies program access to and discriminates against persons with mobility disabilities. This lawsuit seeks a court order requiring the City to comply with these laws and to provide people with mobility disabilities meaningful access to the City's pedestrian right-of-way.

11.     Plaintiffs, thus, bring this action to remedy violations of Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and its accompanying regulations; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and its accompanying regulations; and the CADA, C.R.S. § 24-34-601 *et seq.*, and its accompanying regulations. Plaintiffs seek injunctive relief pursuant to the above statutes and an award of reasonable attorneys' fees, expenses, and costs under applicable law.

12.     In February 2016, Plaintiffs approached the City to resolve this dispute through structured negotiations, rather than litigation. On August 4, 2016, Plaintiffs and the City entered into a Structured Negotiations Agreement. Among other things, the Structured Negotiations Agreement tolled the statute of limitations. Pursuant to the Structured Negotiations Agreement, the parties exchanged extensive information and negotiated a detailed class action settlement agreement. Plaintiffs are filing this action

with the intention of submitting the settlement agreement to the Court for preliminary approval, seeking authorization from the Court to provide notice of the settlement agreement to the class, and then requesting an order from the Court granting final approval of the settlement agreement.

## JURISDICTION AND VENUE

13.     This is an action for injunctive relief brought pursuant to Title II of the ADA, 42 U.S.C. §§ 12101 to 12213; Section 504, 29 U.S.C. § 794, *et seq.*; and the CADA, C.R.S. § 24-34-601 *et seq.*, to redress civil rights violations against individuals with mobility disabilities by the City.

14.     The Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for the federal claims arising under the ADA and Section 504. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 for the state claims arising under the CADA.

15.     This Court has jurisdiction to issue injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

16.     Venue is proper in the District of Colorado because the City resides in the District of Colorado within the meaning of 28 U.S.C. § 1391 and because the events or omissions giving rise to Plaintiffs' claims are alleged to have occurred in the District of Colorado.

## PARTIES

17.     Named Plaintiff Sharon King lives in Colorado Springs. Plaintiff King has a mobility disability that substantially limits her ability to walk and regularly uses a cane,

walker, or wheelchair for mobility due to her disability. Plaintiff King is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and C.R.S. § 24-34-301(2.5).

18.     Named Plaintiff Paul Spotts lives and works in Colorado Springs. Plaintiff Spotts has a mobility disability that substantially limits his ability to walk and uses a wheelchair for mobility due to his disability. Plaintiff Spotts is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and C.R.S. § 24-34-301(2.5).

19.     The plaintiff class consists of all persons with mobility disabilities who use or will use the pedestrian right-of-way in the City of Colorado Springs through the date of judgment in this action.

20.     Hereafter, references in this document to "Plaintiffs" shall be deemed to include Named Plaintiffs and each member of the class, unless otherwise indicated.

21.     The City is a Colorado municipal corporation and home rule city. Presently, and at all times relevant to this Complaint, the City has been a public entity within the meaning of Title II of the ADA and has received federal financial assistance within the meaning of Section 504 sufficient to invoke its coverage. The City also owns places of public accommodation within the meaning of the CADA.

22.     The City is a local government entity with the responsibility of providing Plaintiffs with access to its public facilities, programs, services, and activities. The City is

responsible for constructing, maintaining, repairing, and regulating its pedestrian right-of-way.

## FACTS APPLICABLE TO ALL CLAIMS

23.     As a result of the City's policies and practices with regard to curb ramps in the City's pedestrian right-of-way, people with mobility disabilities have been discriminated against and denied full and equal access to the benefits of the City's pedestrian right-of-way program or service and to facilities in which City programs, services, and activities are made available to the public.

24.     Hereafter, an "Inaccessible" curb ramp shall refer to a curb ramp that did not comply with applicable standards for accessible design (*i.e.*, the Uniform Federal Accessibility Standards, 1991 ADA Standards for Accessible Design, or the 2010 ADA Standards for Accessible Design) at the time it was constructed or altered.

25.     The City has failed to install, remediate, repair, and maintain curb ramps as required by law. For example, numerous intersections in the City have no curb ramps. Even where curb ramps exist, many are improperly installed and/or maintained; lack a flush transition to the street; have excessively steep running, cross, and/or side slopes; are too narrow; and/or are otherwise noncompliant. Many other curb ramps are not maintained; they are broken, cracked, crumbled, sunken, and/or caved.

26.     As a result of the City's policies and practices with regard to curb ramps, large segments of the City's pedestrian right-of-way do not comply with new construction or alteration accessibility requirements. For example, the City often failed to install curb ramps and remediate existing curb ramps when it altered or constructed

sidewalks and streets.

27.    As a result of the many missing and noncompliant curb ramps at intersections throughout the City, the pedestrian right-of-way, when viewed in its entirety, is inaccessible to persons with mobility disabilities. Plaintiffs and others with mobility disabilities are denied meaningful access to the City's pedestrian right-of-way, public buildings, parks, transportation, places of employment, and/or other facilities in which City programs, services, and activities are made available to the public, either through complete denials of access or through delay of travel or unsafe conditions.

28.    This lack of accessible curb ramps is not isolated or limited. Rather, these barriers to full and equal access to the pedestrian right-of-way exist throughout the City, thus denying individuals with mobility disabilities full, equal, and meaningful access to the pedestrian right-of-way City-wide. Persons with mobility disabilities encounter missing or Inaccessible curb ramps throughout the City. As a result, persons with mobility disabilities have been denied access to the accommodations and services available to the general public. Furthermore, these barriers deter persons with mobility disabilities from exploring or visiting areas of the City. Missing and Inaccessible curb ramps also delay travel and cause persons with mobility disabilities to fear for their safety, as these conditions often create dangerous situations.

29.    The City failed to prepare and implement a timely self-evaluation relating to the construction and maintenance of curb ramps as required by federal law. The federal regulations of Section 504 and the ADA required that public entities create a self-evaluation by June 3, 1978 and July 26, 1992, respectively. 45 C.F.R § 84.6; 28

C.F.R. § 35.105. A self-evaluation must include an evaluation of whether current services, policies, and practices discriminate on the basis of disability. In the early 1990's, the City surveyed at least some of its existing programs and facilities to identify structural barriers. The self-evaluation and resulting transition plan did not, however, include an "assessment of the physical barriers in the public rights-of-way." In 2017, the City completed another, more thorough self-evaluation of its facilities, programs, services, and activities. This self-evaluation "update," which the City began in 2014 for the purpose of updating its earlier transition plan, included all City-owned buildings, parks, spectator facilities, and parking structures but excluded the pedestrian right-of-way. At the time this Complaint is filed, the City is in the process of updating its transition plan for all City facilities, programs, services, and activities excluding the pedestrian right-of-way.

30.     From 2016-2018, the City completed a comprehensive inventory of its pedestrian right-of-way assets, including curb ramps. The City began assessing these pedestrian right-of-way assets in 2018 to identify physical barrier to be included in the City's transition plan update. At the time this Complaint is filed, the City's pedestrian right-of-way assessment is underway, but it has not yet been completed.

31.     Despite its recent efforts, the City's failure to conduct a timely self-evaluation and prepare and implement a compliant transition plan relating to the pedestrian right-of-way, including curb ramps, as required by Section 504 and the ADA is further evidence of the City's failure to comply with the "program access" requirements of both statutes.

32.     This discrimination and continuing systemic inaccessibility cause a real and immediate threat of current and continuing harm to persons with mobility disabilities within the City as represented by the experiences of Named Plaintiffs described below.

## EXPERIENCES OF NAMED PLAINTIFFS

33.     Plaintiff King is a retired social worker who has lived in the City since 1998. She regularly uses a cane, a walker, or a wheelchair for mobility. Plaintiff King is an active member of her community, through involvement in her church, membership in the American Needlepoint Guild's local chapter, and serving on the Board of Commissioners at the Colorado Springs Housing Authority. She regularly attends performances by the Colorado Springs Symphony and other concerts, seminars, exhibitions, and political events downtown. In traversing the City to participate in her community in these ways, Plaintiff King regularly experiences problems because of the inconsistent installation of curb ramps throughout the City. She has nearly flipped her wheelchair over into traffic while trying to use driveways to access public transportation where curb ramps were not present.

34.     Plaintiff Spotts moved to the City 27 years ago, after graduating from high school in El Paso, Texas. Since 2012, Plaintiff Spotts has worked as the assistive technology specialist at The Independence Center in Colorado Springs. He uses a wheelchair for mobility, and he has experienced missing curb ramps throughout the City during the course of his work. Plaintiff Spotts has noticed that businesses throughout Colorado Springs are not accessible to persons with mobility disabilities because of a lack of curb ramps.

35.     These experiences are typical of those experienced by persons with mobility disabilities in the City and demonstrate the inaccessibility that people with mobility disabilities experience while trying to navigate the City's pedestrian right-of-way.

## OTHER SPECIFIC BARRIERS

36.     **Exhibit A** attached to this Complaint identifies missing curb ramps at various locations within the City's pedestrian right-of-way as of February 18, 2016 where streets have been altered (*e.g.*, by re-paving) since the passage of the ADA and/or Section 504. Plaintiffs incorporate by reference the entire contents of Exhibit A into this Complaint as though fully alleged herein. To the extent they have not been remediated at the time this Complaint is filed, the barriers listed in Exhibit A require remediation to meet the City's program access obligations and/or its obligations to perform new construction and/or alterations in full compliance with federal and state disability access design standards.

37.     Exhibit A does not represent an exhaustive list of missing curb ramps nor does it identify ramps that exist but are Inaccessible. Exhibit A merely provides a partial list of such barriers facing Named Plaintiffs and the class members throughout the City as they attempt to navigate the City's pedestrian routes.

## CLASS ACTION ALLEGATIONS

38.     Plaintiffs bring this action individually and on behalf of all persons with mobility disabilities who use or will use the pedestrian right-of-way in the City of Colorado Springs as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

39.     Each member of the class is a "qualified person with a disability" and/or a person with a "disability" pursuant to the ADA, 42 U.S.C. § 12131(2); Section 504, 29 U.S.C. § 794 *et seq*.; and the CADA, C.R.S. § 24-34-301(2.5). The persons in the class are so numerous that joinder of all such persons is impracticable and that disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. Plaintiffs estimate that the class consists of tens of thousands of persons with mobility disabilities.

40.     The City has failed to comply with the ADA, Section 504, and the CADA in its implementation of the City's administrative methods, policies, procedures, and practices with regard to the construction, remediation, and maintenance of curb ramps that provide access to the City's pedestrian right-of-way.

41.     The City has not adopted and does not enforce appropriate administrative methods, policies, procedures, and/or practices to ensure that it is in compliance with the ADA, Section 504, and the CADA to ensure nondiscrimination against persons with mobility disabilities and equal access to facilities, programs, services, and activities for persons with mobility disabilities.

42.     The violations of the ADA, Section 504, and the CADA set forth in detail herein have injured all members of the proposed class and violated their rights in a similar way.

43.     The City has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief with respect to the class as a whole appropriate. Class claims are brought for the purposes of obtaining injunctive relief only.

44.     Named Plaintiffs' claims are typical of those of the class in that they arise from the same alleged course of conduct engaged in by the City. The relief sought herein will benefit all class members alike.

45.     Named Plaintiffs will fairly and adequately represent the interests of the class. They have no interests adverse to the interests of other members of the class and have retained counsel who are competent and experienced in litigating complex class actions, including large-scale disability rights class action cases involving the accessibility of municipal pedestrian rights-of-way for classes of individuals with mobility disabilities.

46.     The requirements of Rule 23 of the Federal Rules of Civil Procedure are met with regard to the proposed class in that:

        a.      The class is so numerous that it would be impractical to bring all class members before the Court;

        b.      There are questions of law and fact which are common to the class;

        c.      Named Plaintiffs' claims for injunctive relief are typical of the claims of the class;

        d.      Named Plaintiffs will fairly and adequately represent common class interests and are represented by counsel who are experienced in class actions and the disability rights issues in this case; and

        e.      The City has acted or refused to act on grounds generally applicable to the class.

47.     The common questions of law and fact, shared by Named Plaintiffs and all

class members, include but are not limited to:

a.      Whether the City violated Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, by failing to install or remediate curb ramps that make the City's pedestrian right-of-way program, service, or activity accessible to and useable by persons with mobility disabilities and otherwise discriminating against persons with mobility disabilities, as set forth above;

b.      Whether the City violated Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, by failing to install or remediate curb ramps that make facilities in which City programs, services, or activities are made available to the public accessible to and useable by persons with mobility disabilities and otherwise discriminating against persons with mobility disabilities, as set forth above;

c.      Whether the City violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, by failing to install or remediate curb ramps that make the City's pedestrian right-of way-program, service, or activity accessible to and useable by persons with mobility disabilities and otherwise discriminating against people with mobility disabilities, as set forth above;

d.      Whether the City violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, by failing to install or remediate curb ramps that make facilities in which City programs, services, or activities are made available to the public accessible to and useable by persons with mobility disabilities and otherwise discriminating against persons with mobility disabilities, as set forth above;

e.      Whether the City has performed "new construction" and/or

"alterations" to the City's pedestrian right-of-way within the meaning of 28 C.F.R. § 35.151, triggering an obligation to construct or retrofit curb ramps;

f.      Whether the City has performed "new construction" and/or "alterations" to the City's pedestrian right-of-way within the meaning of 45 C.F.R. § 84.23, triggering an obligation to construct or retrofit curb ramps;

g.      Whether the City violated the CADA, C.R.S. § 24-34-601 *et seq.*, by failing to install or remediate curb ramps that make the City's places of public accommodation accessible to and useable by persons with mobility disabilities and otherwise discriminating against people with mobility disabilities, as set forth above; and

h.      Whether the City, by its actions and omissions alleged herein, has engaged in a pattern or practice of discriminating against Plaintiffs and other persons with mobility disabilities in violation of applicable federal and state disability access laws.

## FIRST CLAIM FOR RELIEF

### Title II of the Americans with Disabilities Act

### of 1990, 42 U.S.C. § 12101 *et seq.*

48.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

49.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

50.     At all times relevant to this action, the City was and is a "public entity"

within the meaning of Title II of the ADA and provides a pedestrian right-of-way program, service, or activity to the general public.

51.    At all times relevant to this action, Plaintiffs were and are qualified individuals with disabilities within the meaning of Title II of the ADA and meet the essential eligibility requirements for the receipt of the services, programs, or activities of the City. 42 U.S.C. § 12131.

52.    The City is mandated to operate each of its programs, services, or activities "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; *see also* 28 C.F.R. § 35.149. This requirement applies to all programs, services, and activities that a public entity offers, whether or not they are carried out in facilities that have been constructed or altered since January 26, 1992. Pedestrian rights-of-way themselves constitute a public program, service, or activity under Title II of the ADA.  28 C.F.R. § 35.104; *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002).

53.    Furthermore, the regulations implementing Title II of the ADA specifically provide that a public entity must install curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after January 26, 1992 and must comply with Uniform Federal Accessibility Standards ("UFAS") or with the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). 28 C.F.R. § 35.151. A street resurfacing project by a public entity is one example of an alteration under the meaning of the regulation. *Kinney v. Yerusalim*, 9 F.3d 1067, 1073-74 (3rd Cir. 1993); *Lonberg v. City of Riverside*, No. 97-CV-0237, 2007 WL 2005177, at *6 (C.D.

Cal. 2007).

54.     The regulations implementing Title II of the ADA provide that a public entity must maintain the features of all facilities required to be accessible by the ADA. 28 C.F.R. § 35.133. Facilities required to be accessible include roads, walks, and passageways. 28 C.F.R. § 35.104.

55.     Due to the lack of accessible curb ramps as alleged above, as well as the City's failure to conduct a timely self-evaluation and implement a compliant transition plan for its pedestrian right-of-way assets, the City's pedestrian right-of-way is not fully, equally, or meaningfully accessible to Plaintiffs when viewed in its entirety. Nor are the facilities in which City programs, services, and activities are made available to the public. The City has, therefore, violated the "program access" obligation applicable to pedestrian right-of-way facilities that have not been newly constructed or altered since January 26, 1992.

56.     Additionally, the sidewalks, cross walks, and other walkways at issue constitute facilities within the meaning of ADAAG and UFAS. Plaintiffs are informed, believe, and thereon allege that since January 26, 1992, the City has constructed, altered, or repaired parts of these facilities within the meaning of the ADAAG and the UFAS, and that the City, through its administrative methods, policies, and practices, has failed to make such facilities readily accessible to and usable by persons with disabilities through the construction and retrofit of curb ramps as required under federal accessibility standards and guidelines.

57.     Plaintiffs are informed, believe, and thereon allege that since March 15,

2012 (the effective date of the 2010 Standards for Accessible Design), the City has constructed, altered, or repaired parts of these facilities within the meaning of the ADAAG and the UFAS, and that the City, through its administrative methods, policies, and practices, has failed to make such facilities compliant with the ADAAG and the UFAS as updated in 2010, as required under 28 C.F.R. § 35.151(c)(5).

58.    Plaintiffs are informed, believe, and thereon allege that the City and its agents and employees have violated and continue to violate Title II of the ADA by failing to maintain the features of the City's walkways and curb ramps that are required to be accessible.

59.    Plaintiffs are informed, believe, and thereon allege that the City and its agents and employees have violated and continue to violate Title II of the ADA by failing to timely respond to and remedy complaints regarding the lack of accessible curb ramps necessary to ensure access to the City's pedestrian right-of-way.

60.    The ADA's regulations at 28 C.F.R. § 35.150(a)(3) prevent public entities from refusing to comply with their obligations to provide persons with disabilities meaningful access to their programs and services by claiming that doing so would impose an undue financial or administrative burden unless such a determination is made by the head of the public entity or his or her designee after considering all agency resources available for use in the funding and operation of the service, program, or activity and the determination is accompanied by a written statement of the reasons for reaching that conclusion. On information and belief, the City, through its heads and/or designees, has failed to make such a determination accompanied by the required

written statement and has, therefore, failed to demonstrate that providing the access Plaintiffs seek to its pedestrian right-of-way would impose an undue financial or administrative burden.

61.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered and continue to suffer difficulty, hardship, anxiety, and danger due to the City's failure to remediate missing, defective, and/or Inaccessible curb ramps throughout the City's pedestrian right-of-way. These failures have denied and continue to deny Plaintiffs the full, equal, and meaningful access to the pedestrian right-of-way that the ADA requires.

62.     Because the City's discriminatory conduct, as alleged herein, presents a real and immediate threat of current and continuing future violations, injunctive relief is an appropriate remedy.

63.     Pursuant to 42 U.S.C. §§ 12133 and 12205, Plaintiffs are entitled to injunctive relief as well as reasonable attorneys' fees, expert expenses, and costs incurred in bringing this action.

## SECOND CLAIM FOR RELIEF

### Section 504 of the Rehabilitation Act

### of 1973, 29 U.S.C. § 794 *et seq.*

64.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

65.     Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or

his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794(a).

66.     Plaintiffs are otherwise qualified to participate in the services, programs, or activities that are provided to individuals in the City. *See* 29 U.S.C. § 794(b).

67.     The City is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

68.     The City and its agents and employees have violated and continue to violate the Rehabilitation Act and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs based solely by reason of their disability to, discrimination in the benefits and services of the City's pedestrian right-of-way and for the reasons set forth above.

69.     Additionally, under Section 504, a recipient of federal financial assistance must install ADAAG- or UFAS-compliant curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after June 3, 1977. *Willits v. City of Los Angeles*, 925 F. Supp. 2d. 1089, 1094 (C.D. Cal. 2013). Plaintiffs allege the City has violated Section 504 by failing to construct or install such compliant curb ramps at intersections throughout the City where it has newly constructed or altered streets, roads, and/or highways since June 3, 1977.

70.     As a direct and proximate result of the aforementioned acts, Plaintiffs suffered and continue to suffer discrimination, difficulty, hardship, anxiety, and danger

due to the City's failure to remediate missing, defective, and/or Inaccessible curb ramps throughout the City's pedestrian right-of-way. These failures have denied Plaintiffs the full, equal, and meaningful access to the pedestrian right-of-way that Section 504 requires.

71.     Because the City's discriminatory conduct presents a real and immediate threat of current and continuing violations, injunctive relief is an appropriate remedy.

72.     Pursuant to 29 U.S.C. § 794a, Plaintiffs are entitled to injunctive relief and to recover from the City the reasonable attorneys' fees and costs incurred in bringing this action.

### THIRD CLAIM FOR RELIEF

**Colorado Anti-Discrimination Act,**

**C.R.S. § 24-34-601 *et seq.***

73.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

74.     The Colorado Anti-Discrimination Act provides in pertinent part: "It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability . . . the full and equal enjoyment of the . . . services, facilities, privileges, advantages, or accommodations of a place of public accommodation." C.R.S. § 24-34-601(2)(a). A "place of public accommodation" includes "any place offering services, facilities, privileges, advantages, or accommodations to the public, including but not limited to . . . any sporting or recreational area and facility; any public transportation facility; . . . or any

public building, park, arena, theater, hall, auditorium, museum, library, exhibit, or public facility of any kind whether indoor or outdoor." C.R.S. § 24-34-601(1).

75.     At all times relevant to this action, the City has owned and operated places of public accommodation within the meaning of the CADA and provides a pedestrian right-of-way to the general public for the purpose of accessing these places of public accommodation.

76.     At all times relevant to this action, Plaintiffs were and are qualified individuals with disabilities within the meaning of the CADA and meet the essential eligibility requirements for the receipt of City services, facilities, privileges, advantages, or accommodations made available to the public. C.R.S. § 24-34-301(2.5).

77.     Plaintiffs allege that the City and its agents and employees have violated and continue to violate the CADA and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs based solely by reason of their disability to, discrimination in the benefits and services of the City's places of public accommodation by failing to construct or remediate its curb ramps to maintain an accessible pedestrian right-of-way and for the reasons set forth above.

78.     As a direct and proximate result of the aforementioned acts, Plaintiffs suffered and continue to suffer discrimination, difficulty, hardship, anxiety, and danger due to the City's failure to remediate missing, defective, and/or Inaccessible curb ramps throughout the City's pedestrian right-of-way. These failures have denied Plaintiffs the full, equal, and meaningful access to the City's places of public accommodation as

required by the CADA.

79.     Because the City's discriminatory conduct presents a real and immediate

threat of current and continuing violations, injunctive relief is an appropriate remedy.

80.     Pursuant to C.R.S. §§ 24-34-601 and -802, Plaintiffs are entitled to

injunctive relief and to recover from the City the reasonable attorneys' fees and costs

incurred in bringing this action.

## **PRAYER FOR RELIEF**

81.     Therefore, Plaintiffs request judgment as follows:

a.      Certification of Plaintiffs' claims as a class action pursuant to

Federal Rule of Civil Procedure 23(b)(2) and certification of Plaintiffs as class

representatives and their undersigned counsel as class counsel;

b.      Issuance of a permanent injunction requiring the City to undertake

remedial measures to mitigate the effects of the City's past and ongoing violations of

Title II of the ADA, Section 504 of the Rehabilitation Act, the CADA, and the regulations

promulgated under those statutes. At a minimum, the City must be enjoined to take the

following actions:

(1)     Ensure that the City installs, remediates, repairs, and

maintains curb ramps such that, when viewed in its entirety, the City's pedestrian right-

of-way is readily accessible to and useable by individuals with mobility disabilities;

(2)     Ensure that the City installs, remediates, repairs, and

maintains curb ramps such that facilities in which City programs, services, and activities

are made available to the public are readily accessible to and useable by individuals

Case 1:19-cv-00829-JLK   Document 1   Filed 03/20/19   USDC Colorado   Page 28 of 29

with mobility disabilities;

(3) Ensure prompt remedial measures to cure past violations of the City's duty to construct or alter curb ramps as required by the new construction and alteration obligations of Title II of the ADA, 28 C.F.R. § 35.151(a), (b), (c) or (i); and Section 504, 45 C.F.R. § 84.22; and the curb ramp design standards in effect at the time of such new construction or alterations;

(4) Ensure that all future new construction and alterations to the City's curb ramps fully comply with the 2010 ADA Standards for Accessible Design or other applicable federal and state disability access design standards, whichever is most stringent in its disability access requirements;

(5) Ensure that the City adopts and implements administrative methods, policies, and practices to maintain accessible curb ramps; and

(6) Remain under this Court's jurisdiction until the City fully complies with the Orders of this Court;

   c.   Reasonable attorneys' fees and costs, as provided by law;

   d.   Monetary relief to the class representatives; and

   e.   Such other relief as the Court finds just and proper.

Dated: <u> March 20, 2019 </u>

_____/s/ Timothy Fox_____

**_Timothy Fox_**
Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Telephone: (303) 757-7901
FAX: (303) 872-9072
Email: tfox@creeclaw.org

**_Julia Campins_**
Campins Benham-Baker, PC
935 Moraga Road, Suite 200
Lafayette, CA 94549
Telephone: (415) 373-5333
FAX: (415) 373-5334
Email: julia@campinsbenhambaker.com

*Attorneys for Plaintiffs, Sharon King and Paul Spotts, on behalf of themselves and all others similarly situated.*