**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00829-JLK

SHARON KING and
PAUL SPOTTS, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

CITY OF COLORADO SPRINGS,

      Defendant.

---

**JOINT MOTION FOR ORDER GRANTING FINAL APPROVAL**
**OF CLASS SETTLEMENT AND APPOINTMENT OF SPECIAL MASTER**

---

Plaintiffs, Sharon King and Paul Spotts ("Plaintiffs" or "Named Plaintiffs") and

Defendant, City of Colorado Springs ("City"), request final approval of a class action

settlement that will transform the City's pedestrian right of way through the installation

or remediation of 15,400 curb ramps on City streets over 14 years. This Court has

already preliminarily approved the Proposed Class Settlement ("Settlement"), which

provides extensive injunctive relief to a class of tens of thousands of people with

mobility disabilities ("Settlement Class" or "Class Members") who use the City's

pedestrian facilities. Since preliminary approval, the City and Class Counsel have

complied with the Court's order directing widespread notice of the Settlement through

web postings and targeted distribution to organizations that serve individuals with

mobility disabilities. Only one objection was received, which, as described below,

appears to be based on the misconception that this lawsuit involves California state

law, and in any event does not provide a basis to reject the proposed Settlement.

Notice of Obj., ECF No. 15 at ¶ 3. Consistent with this Court's preliminary finding that the settlement embodied in the Class Action Settlement Agreement ("Agreement") is fair, adequate and reasonable, to this date no further objections have been received.

Implementation of the Settlement will result in permanent transformation of the City's pedestrian infrastructure to the benefit of all Colorado Springs residents and visitors. Its benefits far outweigh the risks of litigation to both the Plaintiffs and the City. Accordingly, the parties respectfully ask that the Court confirm certification of the Settlement Class and grant final approval of the Agreement.

## I.   FACTUAL BACKGROUND

### A.   Negotiation of Agreement

On February 18, 2016, Plaintiffs' attorneys sent a letter to the Colorado Springs City Attorney and Americans with Disabilities Act Title II Coordinator alleging that the City lacked adequate curb ramps that comply with applicable requirements of federal and state disability rights laws, including Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. § 12131 et seq., Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-601. Decl. of Timothy P. Fox in Supp. of Unopposed Mot. for Class Certification for Settlement Purposes Only, Appointment of Class Counsel, and Prelim. Approval of Proposed Class Settlement ("Fox Decl."), ECF No. 5-1 at ¶ 24. The letter proposed that, as an alternative to litigation, the parties work cooperatively through structured negotiations to resolve these problems. *Id.* The City then voluntarily entered into a Structured Negotiations Agreement with Plaintiffs in August 2016, and for a period of

more than 26 months thereafter, the parties exchanged extensive information and documents pertaining to the status of existing curb ramps in the City's pedestrian right-of-way, the City's ongoing and future construction and remediation of curb ramps in the City's pedestrian right-of-way, the identification of locations where the installation or remediation of curb ramps remained necessary, and the City's past and present policies concerning curb ramps. *Id.* at ¶ 25. The City invested substantial resources in the investigation and negotiation and permitted the Plaintiffs to examine parts of the City's internal GIS database. The parties also conducted numerous joint field visits to discuss and inspect the City's pedestrian right-of-way. *Id.* at ¶ 26. As a part of this process, the City collected and provided to Plaintiffs voluminous information regarding the City's past, present, and future work to improve pedestrian accessibility. *Id.* The City also made City staff available to Plaintiffs on multiple occasions to provide information about City infrastructure and policies. *Id.* In addition, Plaintiffs' counsel conducted in-person inspections of sidewalk corners in the City's pedestrian right-of-way to substantiate Plaintiffs' position regarding the non-compliance of the City's sidewalk corners with federal and state disability access requirements. *Id.*

As a result of the parties' robust negotiations and cooperative information sharing, the parties reached a settlement, the terms of which are set forth in the Agreement. Based upon extensive analysis of the facts and the applicable law and taking into account the risks and uncertainties associated with litigation and the delays that may result from trial and appeals, Class Counsel concluded that the settlement embodied in the Agreement provides substantial benefits to the Settlement Class and is fair, reasonable, and adequate and in the best interest of Plaintiffs and the Settlement Class.

The City likewise concluded that settlement of this matter is desirable to avoid the time, risk, and expense of defending protracted litigation, to fulfill its long-standing commitment to promoting and enhancing the rights of residents and visitors with disabilities, to ensure compliance with laws protecting the rights of individuals with mobility disabilities, and to resolve potential claims of Plaintiffs and the Settlement Class.

**B.      Preliminary Approval**

On March 22, 2019, this Court granted preliminary  approval of the Settlement, including (1) approving certification of the proposed Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(2), and appointing named Plaintiffs and their counsel as representatives of the Settlement Class; (2) approving the proposed Notice and its distribution to the Settlement Class members and all persons entitled thereto; (3) ordering an implementation and notice schedule, including deadlines for submission of objections; and (4) scheduling the Final Approval Hearing for August 21, 2019. ECF No. 7. The Court also determined, on a preliminary basis, that the Agreement was "fair, adequate and reasonable to all potential Settlement Class members" and that it appeared to have "been reached as the result of good faith, prolonged, serious, and non-collusive arms-length negotiations." *Id.* at ¶ 2.

**C.      Notice to the Class and Objections**

After preliminary approval, the parties effected notice pursuant to this Court's preliminary approval order as follows:

- On March 22, 2019, Class Counsel emailed the Notice to the organizations listed in Exhibit 5 to the Agreement and requested that they circulate the Notice to their mailing lists.

- On March 27, 2019, CREEC and the City placed links to the Notice on their websites.

Decl. of Timothy P. Fox in Supp. of Joint Mot. for Final Approval of Class Action Settlement ("2nd Fox Decl.") at ¶¶ 3-7, 8; Decl. of Julie Smith ("Smith Decl.") at, ¶ 2.

On July 26, 2019, Class Counsel filed an Unopposed Motion to Extend Class Notice Deadlines, and Continue Final Approval Hearing, which this Court granted on July 30, 2019. ECF Nos. 10, 13. That same day, Class Counsel sent the revised Notice, along with an explanation for the revised dates, to the organizations listed in Exhibit 5 of the Settlement. 2nd Fox Decl. at ¶¶ 10-12. The revised Notice was also posted on the parties' websites.[1] *Id.* at ¶ 13; Smith Decl. at ¶ 5. A paper copy of the revised Notice was mailed to CREEC's members on August 2, 2019, and electronic versions of the Notice were emailed to members whose mailing addresses were no longer current, or whose Notices were returned as undeliverable. *Id.* at ¶¶ 14-15.

Distribution of the Notice through publication on multiple websites, coupled with facilitating the mailing or emailing of the Notice to members of the Settlement Class through those organizations that serve them, ensured that the Notice reached the maximum number of members of the Settlement Class in the most efficient and cost-

---

[1] For a very short period of time (five days), the Notice was inadvertently taken down from the City's website. *See* Smith Decl. at ¶ 6. With the exception of those five days, it has been continuously posted since March 27, 2019. The posting is intended to run through at least the date of the Final Approval Hearing.

effective manner. The proposed form of Notice and the proposed distribution plan fairly apprised members of the Settlement Class of the settlement and their options with respect thereto, and fully satisfied due process requirements for a Rule 23(b)(2) settlement class with no opt-out rights.

As of the date of this filing, the parties have received only one objection to the Settlement. *See* Notice of Obj., ECF No. 15; 2nd Fox Decl. at ¶ 16. The basis for the objection was that "in California [the] ruling is 3X's the last worked and paid, last class ruled filing." *See id.* at ¶ 3.

## II.     SUMMARY OF PROPOSED SETTLEMENT

The Agreement, attached in full as Exhibit A to the Court's Order Granting Preliminary Approval, includes the following negotiated and agreed-upon terms:

### A.     Injunctive Relief

#### 1.  Survey, Installation, and Remediation of Curb Ramps/Prioritization

Within twenty-four (24) months from the date of the Agreement, the City will perform a comprehensive survey of all City corners at street segments with sidewalks to identify the number and types of curb ramps at each corner as well as curb ramps that are missing or do not comply with regulations in effect when the ramp was installed or altered. The City will use a reliable methodology to collect the data, as agreed to by the parties pursuant to Exhibit 2 of the Agreement. Every six months from the date of the Agreement, the City will provide updated results of the survey to Class Counsel.

The Agreement mandates that whenever the City performs construction or alteration of its roadways or pedestrian facilities, the City will install curb ramps that are missing and remediate curb ramps that do not comply with applicable federal or state disability access standards at all locations affected by the project. *See* 28 C.F.R. §

35.151(a), (b). The only exceptions arise where installation or upgrade is structurally impracticable, in conjunction with new construction, *see* 28 C.F.R. § 35.151(a)(2); technically infeasible, in conjunction with alteration of an existing facility, *see* 28 C.F.R. § 35.151(b)(2); or where the use of alternative designs results in substantially equivalent or greater accessibility and usability ("equivalent facilitation"), *see* 2010 ADA Standards for Accessible Design 103. If the City determines that installation or remediation of a curb ramp at a particular location is structurally impracticable or technically infeasible or that equivalent facilitation is appropriate, the City will ensure that any ramp that is installed or remediated complies with accessibility standards to the maximum extent feasible. Determinations of structural impracticability, technical infeasibility, or equivalent facilitation will be supported by adequate documentation.

The Agreement also requires that, starting in 2018, the City will install or cause the installation of a minimum of 1,100 compliant curb ramps per calendar year (the "Annual Commitment"), and will continue to do so through the term of the Agreement (a maximum of fourteen (14) years. A minimum of 400 of the 1,100 ramps required to be installed each year will be installed at locations (1) requested through the City's existing request procedure, which it agrees to maintain, and/or (2) where existing street level pedestrian walkways cross curbs and no compliant curb ramp currently exists ("Required Minimum Ramps"). The City may combine the Required Minimum Ramps over the years 2018 and 2019. From January 1, 2018 through December 31, 2019, the City must install 800 Required Minimum Ramps.

The Agreement provides that if the City installs, or causes the installation of, more than 1,100 curb ramps in a calendar year, the City may, in its sole discretion, use

the additional ramps to satisfy the yearly requirement for future years. However, the City still must install the Minimum Required Ramps each year.

As a result of these provisions, curb ramp installation and remediation will increase significantly from past practice. For example, from 2006-2014, the City constructed or remediated an average of fewer than 500 ramps per year. From 2015 to 2018, the City has constructed or remediated an average of more than 900 ramps per year. By agreeing to the remediation or installation of 1,100 curb ramps per year, the City will further increase its current ADA efforts. Fox Decl. at ¶ 31.

### 2. Reporting and Verification

The Agreement requires the City to, no later than April 1st of each year beginning in 2019, provide Class Counsel with a report ("Annual Curb Ramp Report") identifying: (1) curb ramps installed by the City, its contractors, or third parties (including developers) in the preceding calendar year; (2) all streets and corners that were altered (as defined by the DOJ/DOT Alteration Guidance) in the preceding calendar year; and (3) a listing and explanation for any locations the City's believes are excepted pursuant to the Agreement.

The Agreement also mandates that, beginning in 2019, the City will retain and pay an independent inspector to annually survey a random sampling of 10% of locations on which curb ramps were, or should have been, installed during the preceding year to ensure that compliant curb ramps were installed. No later than June 1st of each year beginning in 2019, the independent inspector will provide to both parties a written report documenting its findings.

The Agreement requires the parties to jointly submit an annual status report no later than July 1st of each year beginning in 2019 to the Special Master (defined below) and the Court regarding the status of the settlement tasks and progress made in the preceding calendar year. Because the Final Approval Hearing is not scheduled until after the July 1, 2019 deadline, the parties propose to submit their first joint annual status report no later than fifty (50) days after entry of the Final Judgment and Order Approving Settlement. The parties will submit all other annual status reports no later than July 1st of each year beginning in 2020.

### 3.  Training

Under the Agreement, the City will implement a yearly training program for employees responsible for road and sidewalk planning, design, construction or inspection, which will highlight accessible curb ramp requirements.

### B.      Dispute Resolution and Special Master

Under the Agreement, the parties will ask that the Court appoint a special master to have the power to make decisions in all matters pertaining to administration and enforcement of the Agreement. The parties will submit disputes relating to the performance or interpretation of the Agreement for resolution to the Special Master after attempting informal dispute resolution. The parties propose William G. Meyer of Judicial Arbiter Group, Inc. as the initial Special Master. The Proposed Order filed simultaneously with this Motion includes the requirements set forth in Federal Rule of Civil Procedure 53(b), and Mr. Meyer has submitted a declaration as required by that rule establishing that he knows of no basis that he would be disqualified from serving as the Special Master in this case.

### C.    Release of Claims

In exchange for the injunctive relief proposed in the Agreement, Plaintiffs have agreed to release any claims for injunctive relief, declaratory relief, and attendant costs and attorneys' fees against the City that were brought, could have been brought, or could be brought now or in the future by the Settlement Class arising out of the subject matter of the Lawsuit at any time prior to the effective date of the Agreement through the end of the Term. Except as to Named Plaintiffs as described below, the release does not apply to claims related to monetary damages, personal injuries, or property damage with respect to unnamed Class Members. It also does not apply to components of the City's sidewalk system other than curb ramps, street segments that do not contain sidewalks but do contain bus stops, curb ramps adjacent to roads that comprise the State Highway System as defined in Colo. Rev. Stat. §§ 43-2-101 and -102, or curb ramps adjacent to roads that comprise any private, county, or other non-City roadway system.

### D.    Awards to Named Plaintiffs and Class Counsel's Attorneys' Fees, Expenses, and Costs

Subject to Court approval after the application by Plaintiffs, the City will pay each of the Named Plaintiffs $5,000 in consideration for their release of claims, including monetary relief, and in recognition of the services they rendered to the Class Members. The City agrees that, if the Court grants final approval of the Agreement, Plaintiffs are prevailing parties for the purposes of awarding reasonable attorneys' fees and costs. Plaintiffs have moved separately for an award of reasonable attorneys' fees, costs, and expenses in the amount of $145,000 pursuant to Rule 23(h) of the Federal Rules of Civil Procedure. The City does not oppose Plaintiffs' motion.

10

Finally, the City will pay Plaintiffs' attorneys' fees, costs and expenses for work done in connection with monitoring the Agreement, subject to limitations specified in the Agreement, including that in any given year, the City will not be required to pay more than $40,000 for work performed or expenses incurred, except to the extent that in previous years, Plaintiffs received less than $40,000 in fees and costs, in which case the remainder will be banked for use in subsequent years when Plaintiffs' fees and costs exceed $40,000. In no event, however, will the City be required to pay more than $100,000 in fees and costs in any year.

## III.    LEGAL ARGUMENT

### A.    The Settlement Embodied in the Agreement Is Fair and Reasonable and Should Be Granted Final Approval

Judicial approval of a class action settlement under Rule 23 generally involves three steps. First, at the preliminary approval stage, the parties "submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation." Federal Judicial Center, Manual for Complex Litigation § 21.632 (4th ed. 2004), ("Manual"). Second, if preliminary approval is granted, the class representatives must disseminate notice of the proposed settlement to affected class members. *Id.* § 21.633. Third, the court conducts a final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning fairness, adequacy, and reasonableness of the settlement are presented. *Id.* § 21.634. This procedure safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests. *See* William Rubenstein *et al.*, Newberg on Class Actions § 13.39 (5th ed. 2016) ("Newberg").

This process is now reflected in amended Rule 23(e), which sets forth the standards for final approval, Fed. R. Civ. P. 23(e)(2), and instructs that the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," provided that the parties show that "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal," Fed. R. Civ. P. 23(e)(1). This Settlement satisfies the standards of Rule 23(e)(2), and the parties' notice plan was reasonable.

### 1. The Settlement Satisfies Rule 23(e)(2)

The Court may only approve a class settlement if it finds the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This requires consideration of whether:

> **(A)** the class representatives and class counsel have adequately represented the class; **(B)** the proposal was negotiated at arm's length; **(C)** the relief provided for the class is adequate, taking into account: **(i)** the costs, risks, and delay of trial and appeal; **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and **(iv)** any agreement required to be identified under Rule 23(e)(3); and **(D)** the proposal treats class members equitably relative to each other.

*Id.* In amending Rule 23(e), the Advisory Committee made clear that it was not displacing any factors traditionally reviewed by courts in approving class settlements, but rather "focus[ing] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

Here, the proposed Agreement satisfies Rule 23(e)(2):

- As explained above, the class representatives and class counsel have adequately represented the class;

- The Settlement was negotiated at arm's length over the course of two and a half years, involving the exchange of documents, site visits, and multiple drafts of the Agreement, Fox Decl. at ¶¶ 14, 16-26;

- The relief provided to the class is adequate, in light of the fact that litigation and trial of this matter would require the expenditure of significant resources by the parties and the Court, including resources and time spent on fact and expert discovery, further analysis of data, depositions of Class Members, City employees, and experts. Additional resources would be required to complete post-trial briefing and resolve any appeals. *Id.* at ¶ 54. In short, the Agreement obviates the need for further costly and time-consuming litigation that will be better spent on increasing accessibility in the City of Colorado Springs. Under the Agreement, improvements will begin immediately after the Court grants final approval. *Id.* at ¶ 56. Given the importance of the accessibility of the City's pedestrian right-of-way to Class Members' lives, the difference between the possibly long delay involved in litigation and the immediate improvements promised by the Agreement is an important consideration and weighs in favor of preliminary approval. *Id.* The value of an immediate recovery – which includes installation and remediation of 15,400 curb ramps City-wide at the rate of at least 1,100 per year – outweighs the mere possibility of future relief, and when coupled with the City's other obligations under the

Agreement, is likely equal to or greater than any recovery Plaintiffs may be entitled to after protracted, expensive and time-consuming litigation. *Id.*

- The Agreement concerning attorneys' fees is facially reasonable in light of the time spent and result achieved; Plaintiffs' counsel will support their fees and costs through a detailed fee petition prior to final approval.[2]

- All Class Members are treated the same save for small payments of $5,000 each to the Named Plaintiffs in recognition of their efforts on behalf of the class.

Ultimately, the Settlement is more than adequate. Under the Agreement, a minimum of 1,100 curb ramps will be installed or remediated in the City every year for the next 14 years or until a total of 15,400 curb ramps are installed or remediated, a commitment that substantially exceeds the City's past curb ramp construction rates. *Id.* at ¶¶ 29, 31, 47. In meeting this requirement, when the City alters roadways or pedestrian facilities, it will install curb ramps where missing and upgrade curb ramps where present but noncompliant. In addition, the City's curb ramp request system will enable Class Members to have input on the locations of the curb ramps that the City will install and remediate. As a result of these provisions, millions of dollars will be spent installing and remediating curb ramps in the City in compliance with disability access laws. *Id.* at ¶ 48. Class Counsel are confident that the curb ramp installation and remediation required by the Agreement will materially and substantially improve the accessibility of the public right-of-way in Colorado Springs. *Id.* at ¶ 49.

---

[2]    Because there is no relief to the class and no other agreements required to be identified, Fed. R. Civ. P. 23(e)(2)(C)(ii) and (iv) are not applicable.

The monetary terms are fair and adequate in that Class Members are not releasing their right to individual damages claims, and Named Plaintiffs, who are releasing monetary claims, are receiving $5,000 each for doing so. This small sum is not significant enough to be considered preferential treatment and is fair and adequate consideration, as agreed to by the parties, for Named Plaintiffs' release of their individual damages claims. Class Counsel's fees are also fair and adequate—they total well below six figures for the two years of work leading up to this Agreement, are capped at $145,000 for work performed in connection with this Settlement, and are further capped at no more than $100,000 per year in monitoring. Class Counsel have supported their fee request with more detail in the motion for attorneys' fees and costs.

Finally, only one objection has been made to the settlement, and it was based on the misperception that the settlement does not accord with damages provisions under California state law. This objection should be rejected because this lawsuit, and the Settlement, do not involve California state law, and the Settlement does not waive any damages claims by class members.

Thus, the Agreement will provide injunctive relief that is reasonably calculated to effectuate the repairs necessary to make the City's curb ramps accessible to persons with mobility disabilities. This is an excellent result for the Settlement Class, and it is unlikely that this Court would order greater relief. *Id.* at ¶ 52. Because these facts establish that the Agreement is fundamentally fair, adequate, and reasonable, final approval should be granted.

**B.      The Settlement Class Should Be Granted Final Certification.**

In its Order Granting Preliminary Approval of the Settlement as embodied in the

Agreement, this Court certified the Settlement Class, conditioned only upon the entry of the Final Judgment and Order Approving Settlement. Order Granting Unopposed Mot. for Class Certification for Settlement Purposes Only, Appointment of Class Counsel, and Prelim. Approval of Proposed Class Settlement, ECF No. 7 at ¶¶ 1, 11. Specifically, the Court ruled that the requirements of Federal Rules of Civil Procedure 23(a) and Rule 23(b) (2) are met by the Settlement Class. *Id.* at ¶ 1. As detailed above, the Settlement meets the requirements for final approval. As such, the Court should likewise enter an order granting final approval of the Settlement Class.

## IV.    CONCLUSION

For the foregoing reasons, the parties respectfully request that this Court: (1) grant final approval of the Settlement as embodied in the Agreement; (2) grant final certification of the Settlement Class conditionally certified in this Court's Preliminary Approval Order of March 22, 2019; (3) appoint William G. Meyer of Judicial Arbiter Group, Inc. as the initial Special Master; and (4) retain jurisdiction over the litigation and the parties throughout the Term of the Agreement.

Dated: September 12, 2019                    Respectfully submitted,

/s/ Timothy Fox                                            935 Moraga Road, Suite 200
**Timothy Fox**                                            Lafayette, CA 94549
Civil Rights Education and Enforcement      Telephone: (415) 373-5333
Center                                                        FAX: (415) 373-5334
104 Broadway, Suite 400                          Email: julia@campinsbenhambaker.com
Denver, CO 80203
Telephone: (303) 757-7901                       *Attorneys for Plaintiffs, Sharon King*
FAX: (303) 872-9072                               *and Paul Spotts, on behalf of themselves*
Email: tfox@creeclaw.org                         *and all others similarly situated*

**Julia Campins**
Campins Benham-Baker, PC

***Wynetta P. Massey, City Attorney***

/s/ Lindsay Rose
_____
***Lindsay Rose, Senior Attorney***
***Tracy Lessig, Division Chief***
P.O. Box 1575, Mail Code 510
Colorado Springs, Colorado 80901-1575

Telephone: (719) 385-5909
FAX: (719) 385-5538
Email: lrose@springsgov.com

*Attorneys for Defendant,*
*City of Colorado Springs*

## **CERTIFICATE OF SERVICE**

I certify that on the 12th day of September, 2019, I electronically filed the foregoing **JOINT MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AND APPOINTMENT OF SPECIAL MASTER** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Lindsay Rose
lrose@springsgov.com
Tracy Lessig
tlessig@springsgov.com

*Attorneys for Defendant,
City of Colorado Springs*

/s/ Ana Diaz
***Ana Diaz, Paralegal***
Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Telephone: (303) 757-7901
FAX: (303) 872-9072
Email: adiaz@creeclaw.org