**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00829-JLK

SHARON KING and
PAUL SPOTTS, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

CITY OF COLORADO SPRINGS,

      Defendant.

---

**ORDER APPROVING SETTLEMENT AND FINAL JUDGMENT**

---

WHEREAS, on September 27, 2019, the Court held a hearing (the "Fairness Hearing") to determine, among other things, whether the Settlement in this action between Defendant, City of Colorado Springs ("the City"), and Plaintiffs, Sharon King and Paul Spotts ("Plaintiffs"), as set forth in the Class Action Settlement Agreement ("Agreement"), a copy of which is attached hereto as Exhibit A, is fair, reasonable and adequate, such that an Order of final approval should be issued and a final judgment upon said Agreement should be entered by the Court,

WHEREAS, the Fairness Hearing was attended by the Parties, through their respective counsel of record in this action, and by such other individuals and entities as set forth in the record in this matter, and

WHEREAS, the Court has issued its Order giving final approval to the Parties'

Settlement set forth in the Agreement after the Fairness Hearing,

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1)    The Court, for the purposes of the Final Judgment, adopts the terms and definitions set forth in the Agreement.

2)    The Court has jurisdiction over the subject matter of this action, the Plaintiffs, the Settlement Class, the Agreement, and the City.

3)    The Court finds that the notice to the Settlement Class of the pendency of this action and of the proposed Settlement was disseminated by each of the means required under the Agreement and the Orders of this Court dated March 22 and July 30, 2019, and was otherwise fully implemented.

4)    The Court finds that such notice to the Settlement Class, as ordered and implemented, was reasonably calculated under the circumstances to apprise the Settlement Class Members of the pendency of this action, all material elements of the proposed Settlement, and their opportunity (a) to submit written objections to or comments on the Settlement, and (b) to appear at the Fairness Hearing to object to or comment on the Settlement. The Notice of Settlement was reasonable and the best notice practicable to all Settlement Class Members and complied with the Federal Rules of Civil Procedure, due process, and all other applicable laws and rules. A full and fair opportunity has been afforded to the members of the Settlement Class to participate during the Fairness Hearing, and all other persons wishing to be heard have been heard. Only one objection was received, and that objection was based on the misperception that the Settlement addresses California state statutes,

and that the Settlement waives class damages claims, neither of which is the case. Accordingly, the Court determines that all members of the Settlement Class, as set forth below, are bound by the Final Judgment.

5)   On March 22, 2019, this Court appointed Plaintiffs, Sharon King and Paul Spotts, as class representatives of the Settlement Class, and appointed the following counsel as Class Counsel to represent the Settlement Class: (i) Civil Rights Education and Enforcement Center; and (ii) Campins Benham-Baker, PC.

6)   On March 22, 2019, this Court provisionally certified the Settlement Class based on the findings in the Order of the same date. This Court finds that the Settlement Class continues to meet the requirements for class certification under the Federal Rules of Civil Procedure and all other applicable laws and rules.

7)   In particular, the Court finds that: (a) joinder of all Settlement Class Members in a single proceeding would be impracticable, if not impossible, because of their numbers and dispersion; (b) there are questions of law and fact common to the Settlement Class; (c) Plaintiffs' claims are typical of the claims of the Settlement Class that they seek to represent for purposes of settlement; (d) Plaintiffs have fairly and adequately represented the interests of the Settlement Class and will continue to do so; (e) Plaintiffs and the Settlement Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class actions, including those involving the sort of practices alleged in the Complaint; and (f) the City acted or refused to act on grounds that apply to the Settlement Class, so that final declaratory and injunctive relief is appropriate to the Settlement Class.

8)   Class certification is, therefore, an appropriate method for protecting the

interests of the Settlement Class and resolving the common issues of fact and law arising out of the Plaintiffs' claims while also eliminating the risk of duplicative litigation. Accordingly, the Court hereby makes final its earlier provisional certification of the Settlement Class and further confirms the appointment of the Class Representatives and Class Counsel to represent the Settlement Class, as set forth above.

9)   The Court grants final approval of the Settlement set forth in the Agreement and finds that it is fair, reasonable, adequate, and in the best interests of the Settlement Class as a whole.

10)   The Court further finds that the City's Annual Commitment, which requires the installation or remediation of 15,400 curb ramps over the course of 14 years, as set forth in the Agreement is proper and reasonably calculated based on the available information to maintain and ensure accessibility of the pedestrian right of way located in the City of Colorado Springs to persons with Mobility Disabilities. Accordingly, the Settlement shall be consummated in accordance with the terms and conditions of the Agreement.

11)   The Class Representatives and all Settlement Class Members (and their respective heirs, assigns, successors, executors, administrators, agents and representatives) are conclusively deemed to have released and forever discharged the City from all Released Claims as set forth in the Agreement. All members of the Settlement Class are bound by the Final Judgment.

12)   The benefits described in the Agreement are the only consideration, fees, costs and expenses that the City shall be obligated to give to any party or entity,

including without limitation the Class Representatives, Settlement Class Members, and Class Counsel in connection with the claims released in the Agreement and/or the payment of attorneys' fees, costs and expenses in this action.

13)   The parties have requested the Court appoint William G. Meyer of Judicial Arbiter Group, Inc. as a master pursuant to Federal Rule of Civil Procedure 53(a)(1)(A) to perform duties consented to by the parties. Upon consideration of the parties' Joint Motion for Order Granting Final Approval of Class Settlement and Appointment of a Special Master, and in light of the agreement of the parties to allow a special master to perform duties consented to by the parties, it is hereby ORDERED that:

a. Pursuant to Federal Rule of Civil Procedure 53(b), William G. Meyer is appointed as the initial Special Master in this action for the purpose of making decisions in all matters pertaining to administration and enforcement of the Agreement.

b. William G. Meyer has filed an affidavit disclosing that there is no ground for disqualifying him under 28 U.S.C. § 455.

c. The Special Master shall serve throughout the Term of the Agreement.

d. The Special Master must proceed with all reasonable diligence in his exercise of the above-described duties.

e. The Special Master may not communicate *ex parte* with the Court or a party.

f. The materials to be preserved and filed as the record of the Special Master's activities include any disputes submitted by the Parties to the

Special Master, as well as the resolutions of those disputes by the Special Master.

g. In the event the Special Master appointed by the Court is unable or unwilling to act as Special Master, the parties will confer and attempt in good faith to agree to a successor Special Master to propose to the Court.

h. The Special Master's resolution of any disputes under the Agreement that do not require Court approval shall be final, binding, and non-appealable.

i. Except when exceptional circumstances exist requiring a prompt resolution of a dispute by the Special Master, the parties will submit any disputes to the Special Master once a year on or before November 1st of each year starting November 1, 2018 until the Agreement terminates.

j. If the Special Master seeks to resolve disputes that require Court approval, the Special Master shall issue a recommendation for Court approval, which the parties shall not oppose.

k. Within fifty (50) days of entry of the Court's Final Judgment and Order Approving Settlement, the parties shall jointly submit an annual progress report to the Special Master and the Court to apprise the Special Master and the Court of the status of the settlement tasks, and the progress made during the preceding calendar year, in performing the Agreement. The parties shall submit subsequent joint annual progress reports no later than July 1st of each year thereafter beginning in 2020.

l. Any orders or recommendations issued by the Special Master must be filed with the Court, with a copy to the parties. The clerk will enter the

order or recommendation on the docket. The Special Master may report to the Court on other matters as he deems appropriate. Any reports filed with the Court by the Special Master will be served on all parties.

m. The fees and expenses of the Special Master relating to the Agreement shall be paid by the City at the current hourly rate of the Special Master, except that the Class Representatives shall pay these fees and expenses if they submit a matter to the Special Master and the Special Master determines that the Class Representatives' position was frivolous, unreasonable, or without foundation.

n. Should any matter require resolution by the Special Master under the Agreement, attorneys' fees, expenses, and costs shall be awarded in accordance with 42 U.S.C. § 12205. Any fees, expenses, or costs awarded to Plaintiffs against the City pursuant to Special Master involvement related to the Agreement shall count toward and be subject to the caps set forth in the Agreement.

o. This Order may be amended by the Court after notice to the parties and an opportunity to be heard.

p. A copy of this Order will be provided via CMECF to all counsel having appeared for the parties, and they shall ensure that the appointed Special Master receives a copy.

14) The Agreement and the Final Judgment are not admissions of liability or fault by the City, or a finding of the validity of any claims in this action or of any wrongdoing or violation of law by the City. The Agreement is not a concession by the Parties and, to the fullest extent permitted by law, neither the Final Judgment, nor

any of its terms or provisions, nor any of the negotiations connected with it, shall be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceeding to establish any liability of, or admission by the City.

15)   Notwithstanding the foregoing, nothing in the Final Judgment shall be interpreted to prohibit the use of the Final Judgment to consummate or enforce the Agreement or Judgment, or to defend against the assertion of Released Claims in any other proceeding, or as otherwise required by law.

16)   In accordance with the terms of the Agreement, which is attached hereto, the Court reserves exclusive and continuing jurisdiction over Plaintiffs, the Settlement Class Members, the City, and the Agreement throughout the Term of the Agreement, for the sole purpose of supervising the implementation, enforcement, construction, and interpretation of the Agreement and the Final Judgment. In that regard, any challenges to the Agreement terms or implementation, whether under state or federal law, shall be subject to the exclusive and continuing jurisdiction of this Court.

**IT IS SO ORDERED.**

DATED this 30th day of September, 2019.

_John L. Kane_
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE

# EXHIBIT A

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Agreement") is made this 21st day of March, 2019, by Sharon King and Paul Spotts (collectively, "Named Plaintiffs" or "Plaintiffs"), by and on behalf of a class of similarly situated persons, as more fully defined herein ("Settlement Class"); and the City of Colorado Springs, Colorado, a Colorado municipal corporation and home rule city ("City") (individually, a "party" or "Party" and collectively, the "parties" or "Parties").

### RECITALS

WHEREAS, Named Plaintiffs, individually and on behalf of a class of similarly situated persons, allege and have threatened to commence legal action (the "Lawsuit") asserting that they have been denied the benefits of the City's curb ramps because the City has failed to comply with Title II of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, with regard to the installation, maintenance, and design of its curb ramps;

WHEREAS, the City has denied and continues to deny any and all liability or wrongdoing to Named Plaintiffs and to the Settlement Class; by entering into this Agreement, the City does not admit any impropriety, wrongdoing or liability of any kind whatsoever, including any as to the claims raised in the Lawsuit, and on the contrary, expressly denies the same; and the City has entered into this Agreement solely for the purpose of avoiding the expense, inconvenience, distraction and delay of the Lawsuit, without admitting any wrongdoing or liability whatsoever, and without conceding the Named Plaintiffs' ability to certify the alleged putative Settlement Class on its merits under Fed. R. Civ. P. 23;

WHEREAS, the Parties have conducted a thorough examination and investigation of the facts and law relating to the matters set forth in the Lawsuit;

WHEREAS, the Parties have engaged in extensive, arms-length negotiations;

WHEREAS, based upon extensive analysis of the facts and the law applicable to the Complaint, and taking into account the extensive burdens and expense of litigation, including the risks and uncertainties associated with protracted trials and appeals, as well as the fair, cost-effective and assured method of resolving the claims of the Settlement Class, Class Counsel has concluded that this Agreement provides substantial benefit to the Settlement Class and is fair, reasonable, and adequate and in the best interest of the Named Plaintiffs and the Settlement Class;

WHEREAS, the City has similarly concluded that this Agreement is desirable to avoid the time, risk, and expense of defending protracted litigation, to fulfill its long-standing commitment to promoting and enhancing the rights of those with disabilities and to ensure compliance with all laws protecting the rights of the disabled, and to resolve finally and completely the pending and potential claims of the Named Plaintiffs and the Settlement Class; and

WHEREAS, the Parties desire to settle the claims asserted in the Lawsuit and to enter into a settlement agreement related to the Lawsuit and the claims giving rise thereto, in accordance with the provisions and upon the terms and conditions hereafter set forth.

**AGREEMENT**

The recitals above are incorporated here by reference and made a part of this Agreement.

I.    CONDITIONS PRECEDENT.

This Agreement shall be conditioned upon, and shall be effective only upon, the occurrence of all of the following events ("Effective Date"):

A.    Approval of this Agreement by the City Council;

B.    Class Counsel shall make, and the City shall not oppose, the court filings described in Section IV(A) of this Agreement;

C.    Grant by the Court of preliminary approval of this settlement and issuance of notice thereof;

D.    Notice to the Settlement Class in accordance with Section V of this Agreement;

E.    A Final Approval Hearing held in accordance with Section IV(C) of this Agreement;

F.    Final approval of this Agreement by the Court following a Final Approval Hearing; and

G.    Expiration of the time to appeal the Final Approval without the filing of an appeal; or, if an appeal is filed, final adjudication or resolution of the same.

II.   DEFINITIONS.

A.    "DOJ/DOT Alteration Guidance" means the 2013 Department of Justice/Department of Transportation Joint Technical Assistance on the Title II of the Americans with Disabilities Act Requirements to Provide Curb Ramps when Streets, Roads, or Highways are Altered through Resurfacing and the 2015 Supplement to the 2013 DOJ/DOT Joint Technical Assistance on the Title II of the Americans with Disabilities Act Requirements To Provide Curb Ramps when Streets, Roads, or Highways are Altered through Resurfacing, attached hereto as **Exhibit 1**.

B.    "Class Counsel" means attorneys with the Civil Rights Education and Enforcement Center ("CREEC") and Julia Campins with the firm of Campins Benham-Baker.

C.    "Compliance" or "compliant," with respect to the installation (as defined herein) of curb ramps required by this Agreement, means compliant with the applicable provisions of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, 28 CFR § 35.151, and Americans with Disabilities Act standards published by the U.S. Department of Justice in effect when the ramp was or is installed or altered. The current Americans with Disabilities Act standards are the 2010 Americans with Disabilities Act Standards for Accessible Design ("ADAAG") published by the Department of Justice. Existing ramps shall be deemed compliant for purposes of this Agreement notwithstanding that they do not contain truncated domes. New and existing ramps shall be deemed compliant for purposes of this

2

Agreement notwithstanding (1) a running slope greater than 8.3% but less than or equal to 9%, (2) a cross slope greater than 2% but less than or equal to 3%, (3) a gutter/counter slope greater than 5% that when added to the running slope of the ramp does not exceed 13.3%, or (4) if the ramp is located at a midblock crossing or a crossing without yield or stop control or where there is a traffic signal designed for the green phase, a cross slope greater than 2% but less than or equal to the adjacent street or road grade. For purposes of determining compliance, percentage measurements shall be rounded to the nearest tenth of a percent.

**D.** "Final Approval" means the order by the District Court, after notice and the holding of the Fairness Hearing, granting approval of this Settlement Agreement under Rule 23(a) of the Federal Rules of Civil Procedure.

**E.** "Independent Inspector" means a third party mutually agreeable who shall be retained as, and for the purposes, described in Section III(D)(2) below. Plaintiffs will not unreasonably withhold approval of a proposed Independent Inspector.

**F.** "Installation" or "install" means installation or modification of a curb ramp directly by the City or its employees, or installation or modification by entities retained or paid by the City, including contractors.

**G.** "Mobility Disability" means any impairment or medical condition, as defined by the ADA, which limits a person's ability to walk, ambulate, maneuver around objects, or ascend or descend steps or slopes. A person with a Mobility Disability may or may not use a wheelchair, scooter, electric personal assisted mobility device, crutches, walker, cane, brace, orthopedic device, or similar equipment or device to assist their navigation along a Pedestrian Walkway, or maybe semi-ambulatory.

**H.** "Settlement Class" means the class of individuals, including any subclasses, ultimately defined and certified by a Court in this matter.

III.   CURB RAMP PROGRAM.

**A.  Survey.**

1.   The City shall, at its own expense, perform a comprehensive survey of all City corners at street segments with sidewalks to identify the number and types of curb ramps at each corner as well as curb ramps that are missing or do not comply with regulations in effect when the ramp was installed or altered.

2.   The City will use a reliable methodology to collect, at a minimum, the data set forth in **Exhibit 2** with respect to each location that is required to have a curb ramp.

3.   The Survey shall be completed within 24 months from the date of this Agreement above.

4.   Every six months from the date of this Agreement above, the City will provide updated results of the Survey to Class Counsel.

3

**B.**     **Curb Ramp Installation and Remediation.**

1.     In 2018, and in future years whenever the City or the City's contractors "alter" (as defined by the DOJ/DOT Alteration Guidance) or construct a City street, road or highway the City will install, or require the installation of, compliant curb ramps where a street level pedestrian walkway adjacent to the constructed or altered street, road or highway crosses a curb and no compliant curb ramp currently exists.

2.     Starting in 2018, the City will install or cause the installation of a minimum of 1,100 compliant curb ramps per calendar year (the "Annual Commitment"), and will continue to do so through the term of this Agreement. This minimum number does not relieve the City of its obligation under Section III(B)(1) to install curb ramps when it constructs or alters a curb or street, or causes a curb or street to be altered, even if doing so requires installation of more than the required Annual Commitment in a given year.

     a.     A minimum of 400 of the 1,100 ramps required to be installed each year will be installed at locations (1) requested through the City's existing request procedure, which it agrees to maintain, and/or (2) where existing street level pedestrian walkways cross curbs and no compliant curb ramp currently exists. These 400 ramps will be referred to as the "Required Minimum Ramps." As between (1) and (2), ramps requested through the request line have higher priority unless they are already scheduled to be installed within the greater of (i) the 12 months following the request, or (ii) the current plan year. Each ramp installed pursuant to a request on the request line during a given year shall reduce by one the City's obligation to install the 400 Required Minimum Ramps for that year. For example, if in a given year the City installs 150 ramps requested on the request line, then it will be obligated to install a total of 250 additional Required Minimum Ramps in that year. When the sum of (1) requested ramps and (2) ramps to be installed where existing street level pedestrian walkways cross curbs and no compliant curb ramp exists falls below 400, the Required Minimum Ramps will adjust to the sum of (1) requested ramps and (2) ramps to be installed where existing street level pedestrian walkways cross curbs and no compliant curb ramp exists. The City may combine the Required Minimum Ramps over the years 2018 and 2019. As such, from January 1, 2018 through December 31, 2019, the City must install 800 Required Minimum Ramps.

     b.     The City will make reasonable, good faith efforts to inform the public of the existence of the request procedures.

     c.     If the City installs, or causes the installation of, more than 1,100 curb ramps in a calendar year, the City may, in its sole discretion,

4

use the additional ramps to satisfy the yearly requirement for future

years. Nothing in this subparagraph, however, shall relieve the City of its obligation under Section III(B)(1) to install curb ramps whenever a curb or street is altered or constructed, or permit the City to reduce to below 400 the number of Required Minimum Ramps that must be installed each year under Section III(B)(2)(a).

d.   The total number of ramps required to be installed under Section III(B)(2) will include all ramps installed by the City and the City's contractors, and may include ramps the City requires that others install such as new development ramps. The City will identify ramps installed by its contractors or by third parties that it counts towards its obligation. The City remains obligated to perform the terms of this Agreement notwithstanding its use of contractors to perform road work, alterations, or curb ramp installation.

e.   Notwithstanding any other provision of this Agreement, the City's obligation to install a curb ramp is subject to the following exceptions:

(1)   Technical infeasibility: Where a curb ramp would otherwise be required to be altered by this Agreement, but existing physical or site constraints prohibit modification or addition of a curb ramp which is in full and strict compliance, then the City shall provide accessibility to the maximum extent feasible. Before reaching a conclusion about technical infeasibility, the City will consider the extent to which physical or site constraints can be addressed by alternative curb ramp designs.

(2)   Structural Impracticability: In the rare circumstances when the unique characteristics of terrain prevent the installation of a compliant curb ramp during new construction, the City shall comply to the extent that is not structurally impracticable, as further described ·in 28 C.F.R. § 35.151(a)(2)(i).

(3)   Equivalent facilitation: The use of alternative designs, products, or technologies that result in substantially equivalent or greater accessibility and usability is permitted as stated in ADAAG 103. The City bears the burden of demonstrating equivalent facilitation.

(4)   A curb ramp need not be installed at an intersection where it is illegal for a pedestrian to cross the street.

(5)   A curb ramp need not be installed on a segment of street that does not have a sidewalk or other pedestrian walkway.

(6)   Procedure for exceptions. Where the City believes an

exception exists, it will inform Class Counsel of the location

of and basis for the exception in the Annual Curb Ramp Report. If Class Counsel disagrees with the City's determination that an exception applies, the Parties agree to meet and confer. In the event that the Parties are unable to reach agreement as to any exception identified in the Annual Curb Ramp Report, the Parties shall follow the Dispute Resolution provisions set forth in Section IX.

f.      If the City fails to achieve the Annual Commitment because of insufficient funding and it is determined that the failure to fund is not a violation of this Agreement, Plaintiffs, in their sole discretion, may declare that the Agreement is terminated and may reinstitute litigation asserting claims arising from the facts addressed in the Agreement. The City agrees that if litigation is recommenced pursuant to this subsection, it waives the right to assert the affirmative defense of statute of limitations but retains all other affirmative defenses.

3.      This Agreement does not require that the City purchase, or otherwise acquire, property rights to install compliant curb ramps.

4.      This Agreement does not require the City to survey or install curb ramps on private streets or roadways, private property, or at any other location beyond the City's right-of-way.

**C.      Prioritization.** Other than ramps requested through the request line, the City may prioritize installation of ramps at locations where street level pedestrian walkways cross curbs and no curb ramp currently exist over remediation or replacement of existing but noncompliant ramps.

**D.      Verification.**

1.      No later than April 1st of each year beginning in 2019, the City will provide CREEC with a report ("Annual Curb Ramp Report") identifying:

a.      Curb ramps installed by the City, its contractors, or third parties (including developers) in the preceding calendar year;

b.      All streets and corners that were altered (as defined by the DOJ/DOT Alteration Guidance) in the preceding calendar year; and

c.      With respect to any locations where the City believes that one of the exceptions set forth in Section III(B)(2)(e) applies, a detailed explanation of the reasons for the City's belief. Class Counsel may request in writing and the City will provide all non-privileged records necessary for Class Counsel to assess the City's position. Where Class Counsel determines in good faith that they dispute the City's position, resolution of the issue shall be pursuant to the Dispute Resolution provisions described in Section IX below.

8

2.      Beginning in 2019, the City will retain and pay an Independent Inspector to annually survey a random sampling of 10% of locations on which curb ramps were, or should have been, installed during the preceding year to ensure that compliant curb ramps were installed.

    a.      No later than June 1st of each year beginning in 2019, the Independent Inspector will provide to both parties a written report documenting its findings ("Independent Inspector Report").

    b.      Any disputes as to whether the Independent Inspector Report indicates violations of this Agreement, and the consequences of those disputed violations, will be subject to the Dispute Resolution process outlined at Section IX.

3.      No later than July 1st of each year beginning in 2019, the parties shall submit an Annual Progress Report to the Special Master and the Court to apprise the Special Master and the Court of the status of the settlement tasks, and the progress made during the preceding calendar year, in performing this Agreement.

**E.     Training.** Beginning in 2019, the City will implement a yearly training program for employees responsible for road and sidewalk planning, design, construction or inspection, which will highlight ADA curb ramp requirements, federal and state requirements, and the City's policies. The City will work in good faith with CREEC to develop a list of topics for the training program.

**F.     Maintenance.** The City shall maintain or cause to be maintained in operable working condition curb ramps over which it has responsibility. This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs.

**G.     Term.** The Term of this Agreement is the lesser of (1) 14 years from January 1, 2018, or (2) until the City has submitted Annual Curb Ramp Reports identifying a total of at least 15,400 curb ramps installed by the City, its contractors, or third parties (including developers), and shall extend until the Independent Inspector submits a final report confirming that the City has installed all compliant ramps required by this Agreement and until any disputes relating to that final report have been resolved.

**IV.     COURT APPROVAL.**

**A.     Complaint and Initial Motions.** Within ten (10) business days of execution of this Agreement, Plaintiffs shall file the Complaint, attached hereto as **Exhibit 3**, with the United States District Court for the District of Colorado ("Court") and the following submissions. The City shall not oppose these submissions, nor will it move to dismiss the Complaint.

1.      Motion to Certify the Settlement Class for settlement purposes only;

2.      Appointment of Timothy Fox of CREEC, and Julia Campins with the firm of Campins Benham-Baker, as class counsel;

3.      Motion for Preliminary Approval of the Proposed Class Settlement, including:

a.      Approval of the proposed notice of settlement and notice dissemination to the class as outlined in Section V, and a deadline for publication of the notice (the "Notice deadline") that is no more than ten (10) business days after the grant of preliminary approval or as promptly as permitted by the Court;

b.      Approval of the procedure for objections to the proposed settlement described in Section IV(B);

c.      Motion to enjoin members of the Settlement Class from initiating or prosecuting any litigation related to the claims resolved by this Agreement against the City pending the Court's entry of a Final Judgment and Order; and

d.      Motion to Set Date for the final approval hearing as set forth in Section IV(C).

**B.**      **Objections.** The parties shall ask the Court to order the following procedures for objections: Any member of the Settlement Class may object to the proposed settlement by filing, within two months after the Notice deadline, written objections with the Clerk of the Court. Only such objecting Class Members shall have the right, if they seek it in their objection, to present objections orally at the final approval hearing.

**C.**      **Final Approval Hearing.** Named Plaintiffs and the City shall request that a final approval hearing take place within three (3) months after the Notice deadline, or as soon thereafter as the Court may set the hearing.

**D.**      **Motion for Attorneys' Fees.** No fewer than one (1) week before the deadline for filing objections, Plaintiffs shall file a motion requesting an award of attorneys' fees in the amount agreed to by the parties in Section VII(A).

**E.**      **Motion for Final Approval**. At least two (2) weeks prior to the final approval hearing, Plaintiff shall file, and the City shall not unreasonably oppose, a mutually acceptable motion seeking final approval of the settlement and responding to any objections to the settlement.

V.      NOTICE TO THE CLASS OF THE PROPOSED SETTLEMENT.

**A.**      No later than the Notice deadline, the parties shall issue Notice to the Settlement Class as ordered by the Court.

**B.**  The parties will recommend to the Court that such Notice consist of the following measures, to be taken no later than the Notice deadline:

1.  The City will place a link to the Notice, attached as **Exhibit 4**, on its website;

2.  CREEC will post the Notice on its website and email the Notice to its members; and

3.  Class Counsel will email the Notice to the organizations listed in **Exhibit 5**, requesting that they circulate the Notice to their mailing lists.

**C.**  The parties agree that the proposed Notice is reasonably calculated to apprise the Settlement Class of the pendency of this settlement.

## VI.   NAMED PLAINTIFF PAYMENTS.

The City agrees to pay each of the Named Plaintiffs **$5,000.00** within sixty (60) days of the Effective Date. These payments shall be in full and final settlement of Named Plaintiffs' claims that are being released under this Agreement. The check will be made out to CREEC, which will be responsible for dispersing these funds.

## VII.   ATTORNEYS' FEES.

**A.  Fees, Expenses, and Costs for Work Done up through Final Approval.** The City agrees to pay Plaintiffs' attorneys' fees, expenses, and costs incurred through final approval of this Agreement, in the total amount of **$145,000** within sixty (60) days of the Effective Date.

**B.  Fees, Expenses and Costs for Work Done After Final Approval.**

1.  After final approval, Plaintiffs will be entitled to their reasonable attorneys' fees, expenses, and costs (including travel costs) arising from work performed in connection with verification of compliance with this Agreement and any Dispute Resolution arising therefrom pursuant to Section XI below. Plaintiffs will not request and the City will not be required to pay more than **$40,000** annually for such work performed or expenses or costs incurred in any single year of the Agreement ("Annual Fees Cap"). Notwithstanding the Annual Fees Cap, the following shall apply: (a) In 2019 through the end of 2020, the Annual Fees Cap may be combined for use in either 2019 or 2020, provided that the City shall not be required to pay more than $80,000 for Plaintiffs' fees, expenses, and costs for those two years collectively; (b) where Plaintiffs' fees, expenses, and costs are less than the Annual Fees Cap, the remainder amount of Annual Fees Cap may be banked ("Banked Remainder") for use in a subsequent year of this Agreement when Plaintiffs' fees, expenses, and costs may exceed the Annual Fees Cap (there will be no cap on the amount of "Banked Remainder" that may be accrued); and (c) the Annual Fees Cap and the Banked Remainder available for use in any given year shall be no more

11

than $100,000 (*e.g.*, $40,000 Annual Fees Cap plus up to $60,000 of any Banked Remainder, with any unused portion of the Banked Remainder being available for use in future years).

2.    On an annual basis during the Term of this Agreement beginning in 2019, Plaintiffs shall submit to the City a statement of their reasonable attorneys' fees, expenses, and costs incurred during the prior year for performing all work reasonably necessary to monitor, implement, and administer this Settlement Agreement, including reviewing the Annual Curb Ramp Report and Independent Inspector Report for confirmation that the City has met its obligations under this Agreement. Each statement submitted to the City shall be supported by a descripton of services by date and by biller.

3.    To determine the amount of fees, expenses, and costs to which Plaintiffs are entitled for work done after Final Approval of this Agreement, the parties will negotiate in good faith to agree to Plaintiffs' reasonable attorneys' fees, expenses, and costs. If the parties are unable to agree on an amount, the parties agree to submit the issue of Plaintiffs' reasonable fees, expenses, and costs to the Dispute Resolution process outlined in Section IX. The City shall pay all agreed to or awarded amounts for Plaintiffs' fees, expenses, and costs within sixty (60) days from the date of the agreement or award.

4.    In the event either party finds it necessary to seek resolution of a dispute through a motion for enforcement before the Court, the prevailing party shall be entitled to reasonable attorneys' fees, expenses, and costs in accordance with the standards of the ADA and *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

VIII.   JUDGMENT AND FINAL APPROVAL.

A.    At the time of the final approval hearing, the parties shall jointly request that the Court enter a Final Judgment and Order granting final approval of the terms of this Agreement.

IX.    DISPUTE RESOLUTION.

A.    **Informal Dispute Resolution.**

1.    If either party believes that a dispute exists relating to the performance or interpretation of this Agreement, it shall notify the other party in writing, describing the dispute and clearly identifying that they are invoking the dispute resolution process.

2.    The other party shall respond in writing to such notice within ten (10) business days of receipt of the notice.

12

3.  Within ten (10) business days of receipt of the response described in the previous paragraph, counsel for both parties shall meet and confer by telephone or in person and attempt to resolve the issue informally.

**B.**  **Special Master.** The parties shall request that the Court appoint William G. Meyer of Judicial Arbiter Group, Inc. as the initial Special Master who shall have the power to make decisions in all matters pertaining to administration and enforcement of this Agreement. In the event the Special Master appointed by the Court is unable or unwilling to act as Special Master, the parties will confer and attempt in good faith to agree to a successor Special Master to propose to the Court.

1.  If, after completing the steps in Section IX(A), either party believes that a dispute still exists relating to the performance or interpretation of this Agreement, that party may submit the dispute for resolution by the Special Master as described in this Section.

2.  The Special Master's resolution of any disputes under this Agreement that do not require Court approval shall be final, binding, and non-appealable.

3.  If the Special Master seeks to resolve disputes that require Court approval, the Special Master shall issue a recommendation for Court approval, which the parties shall not oppose.

4.  The fees and expenses of the Special Master relating to the Agreement shall be paid by the City, except that the Named Plaintiffs shall pay these fees and expenses if they submit a matter to the Special Master and the Special Master determines that the Named Plaintiffs' position was frivolous, unreasonable, or without foundation.

5.  Except when exceptional circumstances exist requiring a prompt resolution of a dispute by the Special Master, the parties will submit any disputes to the Special Master once a year on or before November 1st of each year starting November 1, 2018 until the Agreement terminates.

6.  Should any matter require resolution by the Special Master under this Section IX(B), attorneys' fees, expenses, and costs shall be awarded in accordance with 42 U.S.C. § 12205. Any fees, expenses, or costs awarded to Plaintiffs against the City pursuant to this paragraph shall count toward and be subject to the caps in Section VII(B) for the year in which they are awarded.

## X.   RELEASES.

Effective on the date of final approval of this Agreement by the Court, Named Plaintiffs, on behalf of themselves and all members of the Settlement Class and their executors, successors, heirs, assigns, agents and representatives, in consideration of the relief set forth herein, the sufficiency of which is expressly acknowledged, unconditionally and forever do fully and finally release, acquit and discharge the City and its present, former, and future elected officials, officers,

managers, supervisors, employees, attorneys, insurers, agents, representatives, and contractors retained by the City to perform the work described herein, and the respective successors, heirs, employees, attorneys, owners, insurers and assigns of the above from any and all actions, causes of action, claims, charges, demands, losses, judgments, liens, indebtedness and liabilities arising out of the subject matter of the Lawsuit for injunctive relief, declaratory relief, and any attendant costs and attorneys' fees (except those provided in Sections VII(B) and IX(B) above), whether known or unknown, suspected or unsuspected, pursuant to the Americans with Disabilities Act of 1990, as amended, the Rehabilitation Act of 1973, as amended, the Colorado Anti-Discrimination Act, as amended, or any other disability non-discrimination law, asserted or unasserted, in the Lawsuit. This Agreement, and the releases contained herein, only cover curb ramps on City street segments with sidewalks, and do not apply to (1) components of the City's sidewalk system other than curb ramps, (2) street segments that do not contain sidewalks but do contain bus stops, (3) curb ramps adjacent to roads that comprise the State Highway System as defined in Colo. Rev. Stat. §§ 43-2-101 and -102, and (4) curb ramps adjacent to roads that comprise any private, county, or other non-City roadway system. Neither Named Plaintiffs nor the Settlement Class release any claims relating to (1) components of the City's sidewalk system other than curb ramps, (2) street segments that do not contain sidewalks but do contain bus stops, (3) curb ramps adjacent to roads that comprise the State Highway System as defined in Colo. Rev. Stat. §§ 43-2-101 and -102, and (4) curb ramps adjacent to roads that comprise any private, county, or other non-City roadway system. Furthermore, the Settlement Class does not release any claims for damages.

## XI.   NON-DISPARAGEMENT.

To the extent allowed by law, the parties agree to not publicly defame or disparage by expressing negative opinions of the Named Plaintiffs, the City, its elected officials, employees or representatives, concerning the subject matter of this Agreement. This does not prevent any party from making statements (A) to the Special Master or the Court concerning the alleged noncompliance by another party with provisions of this Agreement or (B) publicly concerning another party's noncompliance with the provisions of this Agreement as determined by the Special Master in accordance with Section IX or the Court. Further, notwithstanding the foregoing, if a party is subject to a valid subpoena or court order, or is otherwise required by law, to provide truthful testimony in a proceeding, such testimony will not violate this Section XI of this Agreement.

## XII.   DISCRIMINATION CLAIMS.

Nothing in this Agreement is intended to limit in any way any Named Plaintiff's right or ability to file a complaint or claim of discrimination with any federal, state, or local agency. Each Named Plaintiff retains the right to communicate with federal, state, or local agencies and such communication may be initiated by the Named Plaintiff or in response to the government and is not limited by any non-disparagement obligation under this Agreement. However, Named Plaintiffs will not be entitled to recover any monetary relief or other individual remedy arising out of the subject matter of the Lawsuit from the City in connection with a complaint or claim of discrimination filed with and federal, state, or local agency or any resulting litigation.

## XIII.   MEDIA RELEASES.

The parties agree to issue only mutually acceptable press releases regarding this Agreement. The parties agree to cooperate with each other to draft and distribute a joint press release following the execution of this Agreement. All other press releases shall be subject to review and approval by the other party prior to release, which shall not be unreasonably withheld or delayed.

XIV.   BEST INTERESTS OF THE CLASS.

The Named Plaintiffs and Class Counsel represent and affirm that they are seeking to protect the interests of the entire Settlement Class and believe that this Agreement is in the best interests of the Settlement Class.

XV.   COMMUNICATIONS.

Any notice or communication required or permitted to be given to Named Plaintiffs or the City under this Agreement shall be given in writing by email and U.S. mail, addressed as follows:

|  |  |
|---|---|
| To the City: | Mayor<br>City of Colorado Springs<br>30 S. Nevada Avenue, Suite 601<br>Colorado Springs, CO 80903 |
| and | Public Works Director<br>City of Colorado Springs<br>30 S. Nevada Avenue, Suite 401<br>Colorado Springs, CO 80903 |
| With a copy to: | City Attorney<br>City of Colorado Springs<br>30 S. Nevada Avenue, Suite 501<br>Colorado Springs, CO 80903 |
| To Plaintiffs: | Timothy Fox<br>Civil Rights Education and Enforcement Center<br>104 Broadway, Suite 400<br>Denver, CO 80203<br><br>Julia Campins<br>Campins Benham-Baker, PC<br>935 Moraga Road, Suite 200<br>Lafayette, California 94549 |

If the above addresses or the appropriate contact change, it is the responsibility of the Party whose address or contact is changing to give written notice of said change to all other Parties within thirty (30) business days following the effective date of said change.

XVI.   MODIFICATION OR WAIVER OF AGREEMENT.

15

No modification or waiver of any term or provision of this Agreement shall be effective unless it is agreed to by the parties in writing and approved pursuant to Court Order.

XVII.   SEVERABILITY.

If any provision or any part of this Agreement shall at any time be held unlawful, or inconsistent with applicable law, in whole or in part, under any federal, state, county, municipal or other law, ruling or regulation, then the remaining provisions of this Agreement shall remain effective and enforceable.

XVIII.   EXECUTION IN COUNTERPARTS.

This Agreement may be signed in counterpart and shall be binding and effective immediately upon the execution by all parties of one or more counterparts.

XIX.   DUTY TO SUPPORT AND DEFEND AGREEMENT.

Named Plaintiffs and the City by their signatures below, each agree to abide by all of the terms of this Agreement in good faith and to support it fully, and shall use their best efforts to defend this Agreement from any legal challenge, whether by appeal or collateral attack.

XX.   CONTROLLING LAW.

This Agreement shall be interpreted and enforced pursuant to the laws of the State of Colorado, and the Charter, City Code, Ordinances, Rules and Regulations of the City of Colorado Springs.

XXI.   SETTLEMENT PURPOSES ONLY.

This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in this Agreement or its Exhibits, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as any admission of the validity of any claim or any fact alleged by Plaintiffs in the Lawsuit or in any other action or of any wrongdoing, fault, violation of law, or liability of any kind on the part of the City of any claim or allegation made in the Lawsuit or any other action, or as any admission of the Named Plaintiffs' ability to certify the putative Settlement Class on its merits under Fed. R. Civ. P. 23. This Agreement, whether or not approved by the Court or otherwise compromised, shall in no event be construed or deemed to evidence of an admission or a concession on the part of any party with respect to any claim of any fault or liability or damages.

XXII.   CERTIFICATION OF CLASS.

The parties agree that, for settlement purposes only, the Lawsuit shall be certified and proceed as a class action under applicable jurisprudence.

XXIII.   JURISDICTION OF THE COURT.

The parties agree that the Court shall retain exclusive and continuing jurisdiction for the following limited purposes: (1) resolving disputes that require Court approval as set forth in Section IX(B); and (2) appointing a Special Master, and appointing replacement Special Masters in the event that an appointed Special Master retires, dies or becomes incapacitated.

XXIV.   APPROPRIATION.

This Agreement is expressly made subject to the limitations of the Colorado Constitution and Section 7-60 of the Charter of the City of Colorado Springs. Nothing herein shall constitute, nor be deemed to constitute, the creation of a debt or multi-year fiscal obligation or an obligation of future appropriations by the City Council of Colorado Springs, contrary to Article X, § 20, Colo. Const., or any other constitutional, statutory, or charter debt limitation. Notwithstanding any other provision of this Agreement, with respect to any financial obligation of the City which may arise under this Agreement in any fiscal year after the year of execution, in the event the budget or other means of appropriation for any such year fails to provide funds in sufficient amounts to discharge such obligation, such failure (i) shall act to terminate this Agreement at such time as the then-existing and available appropriations are depleted, and (ii) neither such failure nor termination shall constitute a default or breach of this Agreement, including any sub-agreement, attachment, schedule, or exhibit thereto, by the City. As used herein, the term "appropriation" shall mean and include the due adoption of an appropriation ordinance and budget and the approval of a Budget Detail Report (Resource Allocations) which contains an allocation of sufficient funds for the performance of fiscal obligations arising under this Agreement.

XXV.   ENTIRE AGREEMENT.

This Agreement contains all the agreements, conditions, promises and covenants among Named Plaintiffs, the Settlement Class, and the City regarding matters set forth in it and supersedes all prior or contemporaneous agreements, drafts, representations or understandings, either written or oral, with respect to the subject matter of the present Agreement.

[Signature Page to Follow]

**IN WITNESS WHEREOF**, the parties have executed this Agreement of the date first written above.

Sharon King


By:   /s/ Sharon King                          Date:   ___      03/08/2019


Paul Spotts


By:   /s/ Paul Spotts                          Date:   ___      03/08/2019


THE CITY OF COLORADO SPRINGS


By:   /s/ Wynetta P. Massey                    Date:   ___      03/06/2019
        Wynetta P. Massey
        City Attorney


**APPROVED AS TO FORM:**


By:   /s/ Timothy Fox
        Timothy Fox
        Civil Rights Education and Enforcement Center
        Counsel for Named Plaintiffs, Sharon King and Paul Spotts, and the Settlement Class


By:   /s/ Tracy Lessig
        Tracy Lessig
        Office of the City Attorney
        Counsel for the City of Colorado Springs